UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

PETER FERDINANDI,

               Plaintiff,

    -against-

SITUSAMC HOLDINGS CORPORATION,
D/B/A HANOVER STREET CAPITAL
LLC,

             Defendant.

-------------------------------------------------------X

Case No. 1:24-CV-07805-JGK

Hon. John G. Koeltl, U.S.D.J.

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

*On the Brief:*
    Courtney S. Stieber, Esq.
    David S. Ostern, Esq.

SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
T: (212) 218-5500
E: cstieber@seyfarth.com
E: dostern@seyfarth.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

    A.    About the Company ........................................................................ 2

    B.    Defendant's Policies and Procedures .................................................. 2

    C.    Plaintiff's Employment ................................................................... 3

    D.    The Giants Game Incident and Plaintiff's Removal As COO .............. 3

    E.    Madan is Hired as COO and Plaintiff Transitions to CFO .................... 4

    F.    Plaintiff's Complaints About Madan ................................................. 5

    G.    Plaintiff Is Assigned To Work On Project Altitude .............................. 6

    H.    Defendant Terminates Plaintiff's Employment in a RIF ...................... 6

LEGAL STANDARD ................................................................................................ 7

I.    STANDARD OF REVIEW. ............................................................................ 7

ARGUMENT ........................................................................................................... 8

I.    PLAINTIFF'S REVERSE RACE, SEXUAL ORIENTATION, AND GENDER
    CLAIMS FAIL. ............................................................................................. 8

    A.    Legal Standard ............................................................................. 8

    B.    Plaintiff Does Not State a Prima Facie Case. ..................................... 10

    C.    Defendant's Legitimate, Non-Discriminatory Reasons Are Not Pretextual. ......... 12

II.    PLAINTIFF'S AGE DISCRIMINATION CLAIMS FAIL AS A MATTER OF
    LAW. .......................................................................................................... 14

III.    PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW. ................. 17

    A.    Plaintiff Did Not Engage In Protected Activity. .................................. 18

    B.    There is No Causal Connection. ...................................................... 20

    C.    Plaintiff Cannot Overcome Defendant's Legitimate, Non-Retaliatory
    Reason and Establish Retaliatory Pretext. ......................................... 21

CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiken v. MTA N.Y. City Transit*,
   18 CV. 11756, 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021) ...................................................17

*Ames v. Ohio Dep't of Youth Servs.*,
   145 S. Ct. 1540 (2025)..............................................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..........................................................................................................7, 8, 9

*Annunziata v. Int'l Bhd. of Elec. Workers Local Union #363*,
   15-CV-03363, 2018 WL 2416568 (S.D.N.Y. May 29, 2018) ...................................................15

*Bain v. Wal–Mart Stores, Inc.*,
   585 F. Supp. 2d 449 (W.D.N.Y. 2008) ...................................................................................19

*Brown v. City of Syracuse*,
   673 F.3d 141 (2d Cir. 2012)......................................................................................................9

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001).......................................................................................................8

*Brown v. UPS United Parcel Serv. Incorp.*,
   5:22-cv-762, 2022 WL 16734876 (N.D.N.Y. Nov. 7, 2022)....................................................21

*Canady v. Union 1199*,
   253 F. Supp. 3d 547 (W.D.N.Y. 2017) ...................................................................................18

*Cayemittes v. City of N.Y. Dep't of Hous. Preservation & Dev.*,
   974 F. Supp. 2d 240 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016).........................20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................................7

*Coleman v. N.Y.C. Dep't of Health & Mental Hygiene*,
   20cv10503, 2022 WL 704304 (S.D.N.Y. Mar. 9, 2022) .........................................................11

*Crowley v. Billboard Magazine*,
   576 F. Supp. 3d 132 (S.D.N.Y. 2021) (Koeltl, J.) .............................................................10, 16

*Culleton v. Honeywell Int'l, Inc.*,
   257 F. Supp. 3d 333 (E.D.N.Y. 2017) ....................................................................................14

*Dabney v. Christmas Tree Shops*,
958 F. Supp. 2d 439 (S.D.N.Y. 2013)..................................................................................14

*Deebs v. Alstom Transp., Inc.*,
346 F. App'x 654 (2d Cir. 2009) ..........................................................................................19

*Deshpande v. Medisys Health Network, Inc.*,
No. 07-CV-375, 2010 WL 1539745 (E.D.N.Y. Apr. 16, 2010) ..............................................8

*Drummond v. IPC Intern, Inc.*,
400 F. Supp. 2d 521 (E.D.N.Y. 2005) ..................................................................................12

*Dudley v. N.Y. City Hous. Auth.*,
No. 12 Civ. 2771, 2014 WL 5003799 (S.D.N.Y. Sept. 30, 2014) ..........................................17

*Duplan v. City of N.Y.*,
888 F.3d 612 (2d Cir. 2018)..................................................................................................17

*Eder v. City of N.Y.*,
No. 06 Civ. 13013, 2009 WL 362706 (S.D.N.Y. Feb. 12, 2009) ..........................................10

*Francis v. Pactiv Corp.*,
No. CV 04-0417, 2007 WL 879672 (E.D.N.Y. Mar. 21, 2007) ..............................................12

*Freckleton v. Ambulnz NY LLC*,
21-CV-4615, 2022 WL 4644673 (E.D.N.Y. Sept. 30, 2022) ................................................16

*Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*,
136 F.3d 276 (2d Cir. 1998)..................................................................................................19

*Gioia v. Forbes Media LLC*,
501 F. App'x 52 (2d Cir. 2012) ..............................................................................................22

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)....................................................................................................14

*Govori v. Goat Fifty, L.L.C.*,
519 F. App'x 732 (2d Cir. 2013) ............................................................................................12

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000)....................................................................................................10

*Griffin v. Ambika Corp.*,
103 F. Supp. 2d 297 (S.D.N.Y. 2000)....................................................................................13

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)..............................................................................................................14

iv

*Herlihy v. City of New York*,
  654 F. App'x 40 (2d Cir. 2016) ..................................................................................8

*Hill v. Bloomberg L.P.*,
  No. 14–CV–9809, 2016 WL 1665599 (S.D.N.Y. Apr. 20, 2016) ..............................9

*James v. Mun. Credit Union*,
  No. 13-cv-4568, 2016 WL 698136 (S.D.N.Y. Feb. 19, 2016) ..........................10, 16

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005)......................................................................................8

*Jenkins v. New York State Banking Dep't*,
  Nos. 07 Civ. 6322(JGK), 07 Civ. 11317(JGK), 2010 WL 2382417 (S.D.N.Y.
  June 14, 2010)........................................................................................................8, 14

*Kulick v. Gordon Prop. Grp., LLC*,
  23 Civ. 9928, 2025 WL 448333 (S.D.N.Y. Feb. 7, 2025).........................................9

*Lopez v. Guardian Serv. Indus. Inc.*,
  No. 08 CV 08569, 2012 WL 463958 (S.D.N.Y. Feb. 10, 2012) ..............................12

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
  842 F.2d 590 (2d Cir. 1988)......................................................................................18

*McMenemy v. City of Rochester*,
  241 F.3d 279 (2d Cir. 2001)......................................................................................17

*Melman v. Montefiore Med. Ctr.*,
  98 A.D.3d 107 (1st Dep't 2012) .................................................................................9

*Mestecky v. N.Y. City Dep't of Educ.*,
  791 F. App'x 236 (2d Cir. 2019) ..............................................................................17

*Meyer v. Shinseki*,
  12-CV-6337, 2016 WL 11263169 (E.D.N.Y. July 28, 2016)....................................13

*Mitchell v. New York City Dep't of Educ.*,
  20 Civ. 1555, 2021 WL 8013770 (S.D.N.Y. May 7, 2021)........................................8

*Mont. v. First Fed Sav. & Loan Ass'n of Rochester*,
  869 F.2d 100 (2d Cir. 1989)......................................................................................14

*Morales v. Bottling Group, LLC*,
  374 F. Supp. 3d 257 (S.D.N.Y. 2019).......................................................................15

*Murray v. Visiting Nurse Svcs. of N.Y.*,
  528 F. Supp. 2d 257 (S.D.N.Y. 2007).......................................................................21

*Natofsky v. City of N.Y.*,
  921 F.3d 337 (2d Cir. 2019)........................................................................................18

*O'Connor v. Consol. Coin Caterers Corp.*,
  517 U.S. 308 (1996)...................................................................................................15

*Ochei v. The Mary Manning Walsh Nursing Home Co.*,
  No. 10 Civ. 2548, 2011 WL 744738 (S.D.N.Y. Mar. 1, 2011) ................................16

*Parsons v. JPMorgan Chase Bank, N.A.*,
  16-CV-0408, 2018 WL 4861379 (E.D.N.Y. Sept. 30, 2018) ....................................15

*Percy v. Loc. 412 of CSEA, Inc., Loc. 1000*,
  16-cv-5304, 2022 WL 704904 (S.D.N.Y. Mar. 9, 2022)...........................................20

*Petyan v. N.Y.C. Law Dep't*,
  No. 14-CV-143, 2015 WL 1855961 (S.D.N.Y. Apr. 23, 2015), *report and
  recommendation adopted by* 2015 WL 4104841 (S.D.N.Y. July 2, 2015).............20

*Polite v. VIP Comm. Servs.*,
  20 Civ. 7631, 2022 WL 9847075 (S.D.N.Y. Oct. 17, 2022) .....................................18

*Powell-Belnavis v. Guzman*,
  23-cv-7344, 2025 WL 929639 (E.D.N.Y. Mar. 27, 2025) ........................................19

*Ricks v. Conde Nast Pub., Inc.*,
  92 F. Supp. 2d 338 (S.D.N.Y. 2000)..........................................................................13

*Robins v. New York City Bd. of Educ.*,
  No. 07 Civ. 3599 (JGK) (KNF), 2010 WL 2507047 (S.D.N.Y. June 21, 2010) .....17

*Rojas v. Roman Catholic Diocese of Rochester*,
  660 F.3d 98 (2d Cir. 2011)..........................................................................................19

*Sareen v. The Port Authority of N.Y. & N.J.*,
  592 F. App'x. 34 (2d Cir. 2015) .................................................................................21

*Sharpe v. MCI Commc'ns Servs., Inc.*,
  684 F. Supp. 2d 394 (S.D.N.Y. 2010).........................................................................19

*Summit v. Equinox Holdings, Inc.*,
  No. 20 Civ. 4905, 2022 WL 2872273 (S.D.N.Y. July 21, 2022) .............................15

*Taylor v. Seamen's Soc. for Children*,
  No. 12 Civ. 3713, 2013 WL 6633166 (S.D.N.Y. Dec. 17, 2013)..............................12

*Thurmond v. Thomas-Walsh*,
  18-cv-00409, 2022 WL 18027617 (S.D.N.Y. Dec. 30, 2022).................................20

*Toliver v. Cmty. Action Comm'n to Help the Economy, Inc., CACHE*,
  613 F. Supp. 1070 (S.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) ...............................10

*Torre v. Charter Comm'cns, Inc.*,
  493 F. Supp. 3d 276 (S.D.N.Y. 2000).......................................................................................9

*Valerio v. Metro. Transp. Auth.*,
  No. 24-1614, 2025 WL 686028 (2d Cir. Mar. 4, 2025)............................................................9

*Vuona v. Merrill Lynch & Co.*,
  919 F. Supp. 2d 359 (S.D.N.Y. 2013).....................................................................................13

*Wharff v. State Univ. of New York*,
  413 F. App'x 406 (2d Cir. 2011) .............................................................................................15

*White v. Pacifica Found.*,
  973 F. Supp. 2d 363 (S.D.N.Y. 2013)......................................................................................13

*Wilkerson v. Metro. Transp. Auth.*,
  19-cv-9340, 2021 WL 5761649 (S.D.N.Y. Dec. 3, 2021)........................................................22

*Wolf v. Time Warner, Inc.*,
  548 F. App'x 693 (2d Cir. 2013) .............................................................................................18

*Woolf v. Bloomberg L.P.*,
  181 N.Y.S.3d 50 (1st Dep't 2022) ...........................................................................................10

*Ya-Chen Chen v. City Univ. of N.Y.*,
  805 F.3d 59 (2d Cir. 2015)..................................................................................................8, 17

*Yu v. N.Y.C. Hous. Dev. Corp.*,
  494 F. Appx. 122 (2d Cir. 2012)..............................................................................................14

**Statutes**

ADEA ......................................................................................................................... *passim*

New York City Human Rights Laws ..................................................................................... *passim*

New York State Human Rights Laws ..................................................................................... *passim*

Title VII ...............................................................................................................8, 12, 17, 18

**Other Authorities**

FED. R. CIV. P. 56(c) ...................................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff Peter Ferdinandi's ("Plaintiff") employment with SitusAMC ("Defendant" or the "Company") ended for a simple, undisputed reason: the Hanover platform's sole client no longer wanted him in a client-facing role, and—after nearly two years during which the Company attempted to find him an alternative position—his role became redundant and was eliminated in a reduction in force ("RIF"). This case is not about discrimination or retaliation. It is about a senior executive who lost the confidence of his only client, could no longer add value to the business, and now seeks to transform that business reality into a discrimination claim.

For years, Plaintiff served as Head of the Hanover platform. That role unraveled after he offended Deutsche Bank—the platform's only client—through inappropriate remarks at a Giants game on top of a track record of pre-existing poor client service. Deutsche Bank requested his removal, and the Company had no choice but to comply. Plaintiff was reassigned to a non-client-facing role, and a replacement, Sunil Madan ("Madan"), endorsed and funded by Deutsche Bank assumed his former responsibilities. Over the next two years, Plaintiff failed to establish a meaningful role for himself while the business need for his skillset steadily diminished. When Deutsche Bank ceased funding the role and the technology initiative Plaintiff was working on was discontinued, Plaintiff's position was eliminated as part of a broader RIF. The termination decision was not made by Madan and Plaintiff admits neither Madan nor anyone else ever made any discriminatory or retaliatory remarks toward him.

Unable to contest these undisputed facts, Plaintiff asks the Court to infer discrimination based on speculation, disagreement with business judgments, and conclusory assertions tied to his status as a white, heterosexual male in his 50s. That invitation should be declined.

Plaintiff's discrimination and retaliation claims fail at every stage because the record contains no evidence—direct or circumstantial—supporting any inference that SitusAMC's

actions were motivated by his race, gender, sexual orientation, or age; to the contrary, the relevant decisionmakers share Plaintiff's protected characteristics, no discriminatory comments were made, no similarly situated comparator was treated more favorably, and Company policies were applied consistently—gaps that are fatal even under the NYCHRL's broader standard. Instead, the undisputed facts reflect legitimate, nondiscriminatory business decisions: Deutsche Bank, Hanover's sole client, lost confidence in Plaintiff and requested his removal; his successor was selected based on client recommendation and qualifications in a role the client approved and funded; and, after the client ceased funding Plaintiff's position, his role became redundant and was eliminated as part of a broader RIF. Plaintiff cannot establish a *prima facie* case or pretext, offering only speculation and disagreement with business judgment, which is insufficient as a matter of law; his discrimination claims independently fail for lack of evidence, comparators, or any suggestion of discriminatory animus, and his retaliation claim fails because he did not engage in protected activity, the timeline forecloses causation, and no decisionmaker was aware of any purported complaint. For all these reasons, Plaintiff's claims cannot survive summary judgment.

## STATEMENT OF FACTS

### A.    About the Company

SitusAMC is a leading independent solutions provider to the real estate finance industry, which operates Hanover Street Capital ("Hanover"), a dedicated platform and separate entity whose sole function is to provide support to Deutsche Bank. (SOF ¶ 1). In practice, Hanover functions as an extension of Deutsche Bank, servicing that institution exclusively.  (SOF ¶¶ 3-5). Deutsche Bank is Hanover's only client. (SOF ¶ 5).

### B.    Defendant's Policies and Procedures

Defendant maintained anti-discrimination, anti-harassment, and anti-retaliation policies throughout Plaintiff's employment. (SOF ¶¶ 12-19).Those policies set forth procedures for

investigating complaints. (SOF ¶¶ 14, 17-18). The policies were designed to govern investigations into complaints made by employees about other employees, not necessarily complaints by third-party clients such as Deutsche Bank against an employee. (SOF ¶¶ 14-18).

### C.     Plaintiff's Employment

Plaintiff joined Hanover on June 4, 2012, as its Chief Operating Officer ("COO"). (SOF ¶ 6). Plaintiff was hired at a base salary of $225,000 and was eligible for a discretionary annual bonus. (SOF ¶ 7). By 2021, Plaintiff's base salary had increased to $400,000, making him the highest salary on the platform for the duration of his employment. (SOF ¶¶ 9-11).

### D.     The Giants Game Incident and Plaintiff's Removal As COO

On September 12, 2021, Plaintiff hosted a client event at a New York Giants football game, attended by several employees and Deutsche Bank representative Andrew Mullin ("Mullin"). (SOF ¶¶ 34-36). Mullin, a Caucasian male over 50 years old, was Plaintiff's primary contact at Deutsche Bank. (SOF ¶¶ 25-27). At the game, Plaintiff—who is unvaccinated for COVID-19—admittedly made a joke about obtaining fraudulent COVID-19 vaccination cards saying, "I got a guy." (SOF ¶¶ 32, 40). Mullin alleged that Plaintiff also made a homophobic remark, crossed many lines, and did not exercise good judgment. (SOF ¶¶ 46, 54).

Following the game, Mullin raised concerns about Plaintiff to Defendant's Head of Commercial Real Estate, Anne Jablonski ("Jablonski"), describing Plaintiff's conduct as "completely unacceptable," citing inappropriate comments, and expressing broader dissatisfaction with Plaintiff's performance, judgment, and leadership. (SOF ¶ 48). Mullin reported that Plaintiff's conduct caused him to question the Deutsche Bank–Hanover relationship for the first time in nearly a decade. (SOF ¶ 51). Mullin further raised concerns that Plaintiff had not developed relationships within Deutsche Bank, had not effectively mentored junior personnel, and responded inappropriately to client concerns. (SOF ¶¶ 53, 56). Mullin's concerns were reiterated by Raj

3

Mehta ("Mehta"), the COO of CLOSER, another SitusAMC business, who also contacted Jablonski to express concerns about Plaintiff's off-color jokes and comments about COVID-19 vaccination cards at the Giants game. (SOF ¶ 58). Plaintiff testified he had no basis to dispute the concerns Mullin reported. (SOF ¶ 60). Importantly, no employee complained that Plaintiff used a homophobic slur; that allegation came solely from Mullin. (SOF ¶¶ 61, 62).

On September 13, 2021, Mullin informed Jablonski that he and Dino Paparelli ("Paparelli") at Deutsche Bank (who is also Caucasian), decided to have Plaintiff removed as the Head of Hanover and have a new leader inserted. (SOF ¶ 59). Plaintiff was informed that his removal was based on Deutsche Bank's concerns and its unwillingness to continue working with him in that role. (SOF ¶ 66). Despite his removal from head of the platform, Plaintiff remained employed by SitusAMC as a Managing Director and his compensation remained unchanged. (SOF ¶¶ 64, 83). Plaintiff was required to complete sensitivity training and coaching. (SOF ¶ 67).

After Mullin's concerns, Defendant initiated an internal investigation, during which multiple individuals—including Plaintiff and attendees of the game—were interviewed. (SOF ¶¶ 68-69). The investigation was conducted to determine if Plaintiff violated Company policy at the Giants game, and was not a factor in Deutsche Bank's decision to remove him from Head of Hanover. (SOF ¶¶ 59, 66, 68). While Plaintiff's COVID-19 vaccination card comment was corroborated, the other allegations were not able to be substantiated. (SOF ¶ 40, 70). Thus, Plaintiff continued to be employed by the Company. (SOF ¶ 70).

**E.    Madan is Hired as COO and Plaintiff Transitions to CFO**

In or around December 2021, Defendant hired Madan, an Indian-American approximately Plaintiff's same age, as the new COO of Hanover, following a recommendation from Deutsche Bank. (SOF ¶¶ 71-72, 79-81). Madan was selected based on his familiarity with Deutsche Bank and his perceived ability to lead the platform effectively. (SOF ¶ 73). Importantly, Madan was a

4

cost-plus employee, which meant the Company could not independently hire for the role and then force Deutsche Bank to accept the hire; Deutsche Bank had to be in agreement with the hire and willing to pay for the position. (SOF ¶ 74). Madan's age, race, or ethnicity did not play any role in his hiring and Deutsche Bank did not communicate to Defendant any interest in seeking a diverse candidate. (SOF ¶¶ 75-76). Madan's compensation was lower than Plaintiff's compensation. (Declaration of Seema Nathani ("Nathani Decl."), Ex. B).

In April 2022, Plaintiff transitioned to Chief Financial Officer ("CFO") of Hanover. (SOF ¶ 82). Plaintiff no longer interacted directly with Deutsche Bank, but continued to maintain his base salary and bonus eligibility. (SOF ¶¶ 84, 86-87).

### F.    Plaintiff's Complaints About Madan

After Madan's hire, Plaintiff raised concerns about Madan's general management style, but made no complaints that constitute protected activity under applicable law. (SOF ¶¶ 92-120). On January 13, 2022, Plaintiff, Holly Mickens ("Mickens"), Madan, and others participated in a Commercial Real Estate Team (CRELT) call. (SOF ¶ 92). According to Plaintiff, on this call Madan used words that were "insulting, unprofessional, and misogynistic" toward Mickens. (SOF ¶ 93). Mickens, however, viewed the call as a "non-event" and testified that Plaintiff was more troubled by it than she was. (SOF ¶¶ 98-99). Mickens explained that Madan, being new to the Company and not understanding the business, was concerned that an analyst seconded to Deutsche Bank was moving to join another SitusAMC platform that Mickens managed and was concerned that Mickens may have been involved in recruiting him. (SOF ¶ 95).

Separately, on July 25, 2022, Plaintiff complained about Madan being "challenging" to work with, and referred to an email exchange that had occurred on July 24 and 25, 2022, in which Plaintiff was moved to BCC and Madan said Plaintiff was busy with other work. (SOF ¶¶ 105-110, 117).  That same day, Plaintiff sent a text message to Steve Powel ("Powel"), a then-former

CEO of Defendant, stating he felt like he was "kept in the dark." (SOF ¶ 107). Plaintiff also sent a text message to Jablonski, in which he states that he finds it "interesting that S[unil] [ ] M[adan] elegantly cuts me out because He says I am swamped . . . ." (SOF ¶ 108). Plaintiff also stated to Jablonski that "[i]nfo is so closely controlled and shared on a need to know basis." (SOF ¶ 109). Plaintiff never attributed Madan's actions to "discrimination," "harassment," or "retaliation" and his own words confirm that his concerns were general workplace grievances about Madan's management, not tethered to any protected characteristics. (SOF ¶¶ 105-110, 117). Plaintiff agreed that others at the Company had similar issues with Madan. (SOF ¶ 111). Plaintiff never reported concerns of discrimination, harassment, or retaliation through formal channels or to Human Resources. (SOF ¶¶ 115-116, 118-120). Defendant also did not receive any complaints of unlawful conduct by Madan. (SOF ¶ 120).

### G.     Plaintiff Is Assigned To Work On Project Altitude

In approximately April 2023, Plaintiff was assigned to be Orchestrator for Project Altitude, an internal transformation initiative for technology and operations. (SOF ¶¶ 122, 125). Plaintiff reported to Mickens and worked with Martin Spiegelman ("Spiegelman"), Bruce Davidson ("Davidson"), a SitusAMC employee who was not associated with Hanover, and Norah Pinkhas ("Pinkhas"). (SOF ¶¶ 126-127). Davidson and Spiegelman are both Caucasian. (SOF ¶¶ 128, 131). Plaintiff believes that Davidson is around his age and Spiegelman was older than him. (SOF ¶¶ 130, 132). Project Altitude was not successful. (SOF ¶ 137).

### H.     Defendant Terminates Plaintiff's Employment in a RIF

On November 6, 2023, Plaintiff was informed that his employment was terminated as part of a broader RIF affecting more than 30 employees. (SOF ¶¶ 147-148). Franco, with input from Jablonski and Human Resources, made the decision to terminate Plaintiff's employment; Madan was not involved in that decision. (SOF ¶¶ 138-140).

At the time of his termination, Plaintiff was the only Hanover employee on Project Altitude whose role was not being paid for by Deutsche Bank. (SOF ¶ 141). Plaintiff's position was eliminated because Deutsche Bank was no longer funding his role and, following the wind-down of Project Altitude, his position was redundant. (SOF ¶ 144).

Defendant offered Plaintiff a separation package that included a lump-sum payment equal to 83% of his 2022 bonus and one month of COBRA coverage—the same methodology as what was offered to another female Managing Director included in the RIF. (SOF ¶¶ 149, 158). This exceeded the Company's severance policy, but was consistent for those with Managing Director titles.  (SOF ¶ 154). Plaintiff speculates that other employees received more favorable severance packages, but he cannot point to anyone similarly situated who did. (SOF ¶ 159). For example, Plaintiff points to a former female employee claiming she received a better offer than he did, but her employment was terminated in or around April 2020, more than three years before his, and prior to the implementation of the applicable severance policy. (SOF ¶¶ 152-153).

**LEGAL STANDARD**

### I.    STANDARD OF REVIEW.

Summary judgment is appropriate where the record evidence establishes there is no genuine issue of material fact and the non-movant's claims fail as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 268 (1986). The moving party need only show the absence of proof of any essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 n.3 (1986) (citations omitted). Once a properly supported summary judgment motion has been made, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.*

A plaintiff in a discrimination or retaliation case "must 'do more than simply show that there is some metaphysical doubt as to the material facts[.]' [. . .] [H]e must come forth with

7

evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citations omitted).

The NYCHRL "does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Deshpande v. Medisys Health Network, Inc.*, No. 07-CV-375, 2010 WL 1539745, at *22 (E.D.N.Y. Apr. 16, 2010) (citation omitted). Plaintiff must present admissible "concrete evidence from which a reasonable [factfinder] could return a verdict in [his] favor." *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.") (citation omitted). Plaintiff cannot "rely solely on allegations in [the] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible" to defeat summary judgment. *Herlihy v. City of New York*, 654 F. App'x 40, 43 (2d Cir. 2016) (citation modified).

## ARGUMENT

### I. PLAINTIFF'S REVERSE RACE, SEXUAL ORIENTATION, AND GENDER CLAIMS FAIL.

#### A. Legal Standard

Courts apply the familiar *McDonnell Douglas* burden shifting analysis to sex and race discrimination claims under Title VII, the ADEA, NYSHRL, and NYCHRL. *See Mitchell v. New York City Dep't of Educ.*, 20 Civ. 1555, 2021 WL 8013770, at *6 (S.D.N.Y. May 7, 2021); *see also Jenkins v. New York State Banking Dep't*, Nos. 07 Civ. 6322(JGK), 07 Civ. 11317(JGK), 2010 WL 2382417, at *6 (S.D.N.Y. June 14, 2010) ("plaintiff's claims of discrimination on the basis of age, race, gender, and religion brought pursuant to Title VII, ADEA, and the New York State and City Human Rights Laws, are evaluated at the summary judgment stage by the burden-shifting analysis that governs Title VII, established in *McDonnell Douglas* . . . ."); *see also Ya-*

*Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75-76 (2d Cir. 2015) (using the burden-shifting framework for NYCHRL claims). Claims under the NYSHRL are analyzed under the same framework as NYCHRL claims. *See Kulick v. Gordon Prop. Grp., LLC*, 23 Civ. 9928, 2025 WL 448333, at *8-9 (S.D.N.Y. Feb. 7, 2025).

For Plaintiff's federal claims, he must show that (i) he is a member of a protected class; (ii) he was qualified for the position that he held; (iii) he suffered an adverse employment action; (iv) the adverse action took place under circumstances giving rise to an inference of discrimination. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Plaintiff is not required to satisfy any heightened burdens notwithstanding the fact that he is a white male claiming that he was discriminated against. *See generally Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540 (2025).

Under the NYSHRL and the NYCHRL, Plaintiff must show that he was treated "less well" because of his race, sexual orientation or gender. *See Gordon Prop. Grp., LLC*, 2025 WL 448333, at *8 (noting that the NYSHRL standard is now viewed "closer to the standard of the NYCHRL" following the 2019 amendments). Even under this lesser burden, Plaintiff must still allege "differential treatment that is more than trivial, insubstantial, or petty." *Torre v. Charter Comm'cns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2000) (citation modified).

To state a *prima facie* case, Plaintiff must present "concrete evidence" of discrimination. *See, e.g.*, *Liberty Lobby, Inc.*, 477 U.S. at 256. This is true even for NYCHRL and NYSHRL claims, which have a "more liberal pleading standard." *See Valerio v. Metro. Transp. Auth.*, No. 24-1614, 2025 WL 686028, at *3 (2d Cir. Mar. 4, 2025) (summary order). "[E]ven under the NYCHRL, the burden of persuasion of the ultimate issue of discrimination always remains with the plaintiff." *Hill v. Bloomberg L.P.*, No. 14–CV–9809, 2016 WL 1665599 at *10 (S.D.N.Y. Apr. 20, 2016) (citation modified); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 114 (1st Dep't

9

2012) (same). Importantly, "[t]he general principle that the [NYC]HRL must be construed broadly in favor of plaintiffs does not substitute for evidence" of discrimination. *Woolf v. Bloomberg L.P.*, 181 N.Y.S.3d 50, 52 (1st Dep't 2022).

### B.    Plaintiff Does Not State a *Prima Facie* Case.

Here, Plaintiff cannot set forth a *prima facie* case of reverse race, sexual orientation, or gender discrimination because there are absolutely no facts or circumstances to support that anything that happened to Plaintiff is the result of his protected class. Similarly, there is no evidence that Plaintiff was treated less favorably than a similarly situated non-white, non-straight, or non-male employee. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38-39 (2d Cir. 2000).

Plaintiff has adduced no evidence that any adverse action occurred under an inference of discrimination.  First, both Franco and Mullin were white men over the age of 40 when determining to remove Plaintiff from COO of Hanover, and later, terminate his employment.  (SOF ¶¶ 20, 25-26). *See Eder v. City of N.Y.*, No. 06 Civ. 13013, 2009 WL 362706, at *8 (S.D.N.Y. Feb. 12, 2009) (no inference of discrimination where the decisionmaker is a member of the same protected class as plaintiff); *Crowley v. Billboard Magazine*, 576 F. Supp. 3d 132, 143-144 (S.D.N.Y. 2021) (Koeltl, J.) (decision maker belonging to the same class as plaintiff "creates a further inference *against* discrimination.") (citing *James v. Mun. Credit Union*, No. 13-cv-4568, 2016 WL 698136, at *5 (S.D.N.Y. Feb. 19, 2016) ("[A] well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class."); *Toliver v. Cmty. Action Comm'n to Help the Economy, Inc., CACHE*, 613 F. Supp. 1070, 1073-1074 (S.D.N.Y. 1985) (if decision maker is in same protected class as plaintiff, claims of discrimination become less plausible), *aff'd*, 800 F.2d 1128 (2d Cir. 1986).

Second, Madan's hire does not create an inference of discrimination. The undisputed record evidence shows the decision to hire Madan (who used to work for Deutsche Bank) was

because he had an understanding of the inner workings of Deutsche Bank who recommended him, he had the trust of key stakeholders, and leadership believed he would be successful as the COO. (SOF ¶ 73). And, contrary to Plaintiff's speculation, there is no evidence Madan's race (or age) was a factor in that decision at all. (SOF ¶ 76).

Third, Plaintiff has not identified a single non-white, non-straight or non-male employee that was treated more favorably under similar circumstances.  While Plaintiff attempts to concoct a theory that his internal investigation was handled differently—e.g., he was removed from his position before it was commenced thus purportedly denying him "due process" to keep his role as head of the platform—it is undisputed that Mullin directed his removal and that the decision had nothing to do with the outcome of the investigation.  (SOF ¶ 59). Rather, the investigation resulted in *favorable* treatment to Plaintiff, as it did not substantiate the alleged homophobic remarks that would have violated Company policy and been independent cause to terminate Plaintiff's employment altogether. (SOF ¶ 70). *See Coleman v. N.Y.C. Dep't of Health & Mental Hygiene*, 20cv10503, 2022 WL 704304, at *5 (S.D.N.Y. Mar. 9, 2022) (dismissing NYCHRL claim because plaintiff "does not point to a comparator to show that [his employer] treated him less favorably than a similarly situated employee without a disability, recite any discriminatory comments, or otherwise plausibly plead a claim of discrimination[]").

Fourth, Plaintiff's severance offer does not establish an inference of discrimination, as the evidence has shown that his offer was calculated in the same manner as the other female Managing Director included in the RIF (whose offer was actually lower under the same methodology). (SOF ¶ 158).

Finally, the record evidence is devoid of a single gender-based, sex-based or race-based comment during his employment. This lack of such discriminatory comments eviscerates his

claims. *See, e.g.*, *Francis v. Pactiv Corp.*, No. CV 04-0417, 2007 WL 879672, at \*13 (E.D.N.Y. Mar. 21, 2007) (absence of discriminatory comments can be considered by court); *Lopez v. Guardian Serv. Indus. Inc.*, No. 08 CV 08569, 2012 WL 463958, at \*5 (S.D.N.Y. Feb. 10, 2012) (same).

### C.      Defendant's Legitimate, Non-Discriminatory Reasons Are Not Pretextual.

Even were Plaintiff to set forth a *prima facie* case of reverse race and gender discrimination, which he cannot, Plaintiff's Title VII, NYSHRL, and NYCHRL claims also fail because Defendant had a legitimate, non-discriminatory reason for (i) removing him as COO and Head of Hanover and (ii) terminating his employment. Defendant removed Plaintiff from COO and Head of Hanover at the direction of Hanover's only client, Deutsche Bank, based on a multitude of performance reasons beyond just Plaintiff's conduct at the Giants game, which placed the Deutsche Bank relationship in jeopardy. (SOF ¶¶ 49-53, 55-57, 59). A client complaint—in fact, a complaint from Hanover's only client— is a legitimate, non-discriminatory reason for Plaintiff's removal as COO. *See Drummond v. IPC Intern, Inc.*, 400 F. Supp. 2d 521, 531 (E.D.N.Y. 2005) (suspending plaintiff at the request of the client satisfied defendant's burden to proffer a nondiscriminatory reason); *see also Govori v. Goat Fifty, L.L.C.*, 519 F. App'x 732, 733 (2d Cir. 2013) (summary order) (affirming summary judgment where "Defendants have presented legitimate, non-discriminatory reasons for [Plaintiff's] termination based on her poor work performance in the months prior to her termination").

Additionally, the decision to terminate Plaintiff's employment was because Deutsche Bank was no longer paying for his role, Project Altitude was operationally unsuccessful, and as a result, Plaintiff's position was redundant. (SOF ¶ 137). *See Taylor v. Seamen's Soc. for Children*, No. 12 Civ. 3713, 2013 WL 6633166, at \*15 (S.D.N.Y. Dec. 17, 2013) (employer satisfied its burden by asserting that the plaintiff's position became redundant warranting termination). Moreover,

12

Plaintiff's employment was terminated as part of a RIF, which, by itself, is a legitimate, non-discriminatory reason. *See Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 373 (S.D.N.Y. 2013) (citations omitted) ("A RIF can indeed provide a legitimate, non-discriminatory reason for a termination . . . .").

Because Defendant has set forth a legitimate non-discriminatory reason, under the *McDonnell-Douglas* burden-shifting framework, Plaintiff bears the burden of demonstrating that Defendant's legitimate, non-discriminatory reason was *false* and actually a pretext to discriminate against him. This he cannot do.  First, Plaintiff has no evidence the reasons are false: he admits he has no reason to dispute that Mullin complained and requested his removal. (SOF ¶ 60). Additionally, Project Altitude was unsuccessful and Plaintiff cannot dispute that Deutsche Bank was no longer covering his salary, nor can he dispute that his position was eliminated in a reduction in force. (SOF ¶¶ 144, 148).

For the same reasons he cannot establish an inference of discrimination, Plaintiff cannot establish pretext.  He points to no derogatory comments, no circumstantial or direct evidence of discrimination, and no valid comparators treated better than him. Plaintiff's subjective belief is not enough.  It is well-settled that the mere fact an employee disagrees with an employer's assessment of his work cannot alone establish pretext. *See Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 309 (S.D.N.Y. 2000) (quoting *Ricks v. Conde Nast Pub., Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000)); *see also Meyer v. Shinseki*, 12-CV-6337, 2016 WL 11263169, at *12-13 (E.D.N.Y. July 28, 2016) (same); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 382 (S.D.N.Y. 2013) (Plaintiff's "fundamental disagreement with the conclusions [his] supervisors drew" and his subjective belief they were someone else's fault, is not evidence that the supervisor's appraisals were a sham, invented to mask discrimination) (alteration in original).

At bottom, courts have repeatedly refused to operate as a "super-personnel department," and rejected invitations to substitute their own judgment for the judgment of well-positioned and informed managers. *See Culleton v. Honeywell Int'l, Inc.*, 257 F. Supp. 3d 333, 341 (E.D.N.Y. 2017) ("Federal courts do not have a 'roving commission to review business judgments'") (quoting *Mont. v. First Fed Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989)). Thus, these claims must be dismissed.

## II.    PLAINTIFF'S AGE DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's age discrimination claims are likewise analyzed under the *McDonnell Douglas* burden-shifting framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 & n.6 (2d Cir. 2010) (concluding that the *McDonnell Douglas* framework remains binding in cases in the Second Circuit under the ADEA and NYSHRL); *Jenkins*, 2010 WL 2382417, at *6 (applying the *McDonnell Douglas* framework to claims of age discrimination under the ADEA, NYSHRL, and NYCHRL). However, under the ADEA, "the final stage [of the analysis] is different [than the *McDonnell-Douglas* test for claims such as gender discrimination.] [P]laintiff must show . . . that [ ] defendant discriminated on the basis of age [ ] [and] that age discrimination was the 'but-for' cause of the adverse action, [ ] not merely one of the motivating factors." *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 451 (S.D.N.Y. 2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *see also Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. Appx. 122, 124–25 (2d Cir. 2012) (summary order).

Plaintiff cannot satisfy the burden-shifting framework to establish age discrimination, let alone demonstrate that his age is the "but-for" cause of the Company's decisions.

First, Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA, the NYSHRL, or the NYCHRL. Plaintiff offers not a single age-based comment or age-related comparator to establish any inference that any adverse action occurred due to age.

Second, Plaintiff has failed to identify a similarly-situated younger employee who was treated more favorably. *See Summit v. Equinox Holdings, Inc.*, No. 20 Civ. 4905, 2022 WL 2872273, at *9-10 (S.D.N.Y. July 21, 2022) (granting summary judgment on ADEA claim because plaintiff did not develop comparator evidence of favorable treatment toward younger employees); *see also Annunziata v. Int'l Bhd. of Elec. Workers Local Union #363*, 15-CV-03363, 2018 WL 2416568, at *12 (S.D.N.Y. May 29, 2018) (plaintiff's ADEA and age-related NYSHRL claims were dismissed, in part, because plaintiffs failed to identify any age-related comparators). Plaintiff admittedly cannot attest to Madan's age at the time he became COO and Head of Hanover, but believes him to be "possibly" around his same age. (SOF ¶ 80). "[A]n inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Courts within the Second Circuit have applied this principle to the NYSHRL and NYCHRL. *See, e.g.*, *Parsons v. JPMorgan Chase Bank, N.A.*, 16-CV-0408, 2018 WL 4861379, at *9 (E.D.N.Y. Sept. 30, 2018) (plaintiff failed to raise inference of age discrimination under ADEA, NYSHRL, and NYCHRL where comparator was only six years younger). In actuality, Madan was 54 years old at the time in which he replaced Plaintiff as the COO and Head of Hanover. (SOF ¶ 81).

Third, Plaintiff cannot establish that Madan, who replaced Plaintiff, was less qualified. The record demonstrates that Madan came recommended from Deutsche Bank, when Deutsche Bank was unwilling to work with Plaintiff. (SOF ¶ 72). *See Morales v. Bottling Group, LLC*, 374 F. Supp. 3d 257, 269-270 (S.D.N.Y. 2019) (plaintiff failed to raise an inference of discrimination because the individual promoted was better qualified); *see also Wharff v. State Univ. of New York*, 413 F. App'x 406, 408 (2d Cir. 2011) (summary order) ("Where a decision … is reasonably

15

attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn.") (citation modified).

Fourth, the fact that the decisionmakers were also over 40 eviscerates any inference of discrimination based on age. (SOF at ¶¶ 20, 22, 138, 140). *See Billboard Magazine*, 576 F. Supp. 3d at 143-144 (decision maker belonging to the same class as the plaintiff "creates a further inference against discrimination[]") (citing *James v. Mun. Credit Union*, No. 13-cv-4568, 2016 WL 698136, at *5 (S.D.N.Y. Feb. 19, 2016) ("[A] well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class."); *Cmty. Action Comm'n to Help the Economy, Inc., CACHE*, 613 F. Supp. at 1074 (if decision maker is in same protected class as plaintiff, claims of discrimination become less plausible).

In short, Plaintiff's age discrimination claims are nothing more than the "false syllogism" uniformly rejected by courts in this Circuit: "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)." *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10 Civ. 2548, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (citation modified); *see also Freckleton v. Ambulnz NY LLC*, 21-CV-4615, 2022 WL 4644673, at *6 (E.D.N.Y. Sept. 30, 2022) (denying failure-to-promote claim for this reason). The record is entirely devoid of any evidence to support Plaintiff's burden that his age was the "but-for" cause of any of the alleged adverse employment actions.

For the same reasons set forth above, *supra* at I(C), Defendant has proffered a legitimate non-discriminatory reason for its actions toward Plaintiff and Plaintiff cannot demonstrate that

16

those reasons are false or that the real reason is his age—he has not an iota of evidence to support this claim and it too must be dismissed.

### III.    PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's retaliation claims also fail as a matter of law. Courts apply the *McDonnell-Douglas* burden-shifting framework to retaliation claims under Title VII, the ADEA, NYSHRL, and NYCHRL. *See Mestecky v. N.Y. City Dep't of Educ.*, 791 F. App'x 236, 238 (2d Cir. 2019) (summary order) (Title VII; NYSHRL); *Robins v. New York City Bd. of Educ.*, No. 07 Civ. 3599 (JGK) (KNF), 2010 WL 2507047, at *9 (S.D.N.Y. June 21, 2010) (Title VII; ADEA); *City Univ. of N.Y.*, 805 F.3d at 75-76 (NYCHRL). To allege a cognizable Title VII retaliation claim, Plaintiff must establish: "(1) participation in a protected activity; (2) that . . . [Defendant] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). However, Title VII retaliation claims require a heightened standard of causation than discrimination claims; namely, that the protected activity was a "but for" cause of the retaliation. *Aiken v. MTA N.Y. City Transit*, 18 CV. 11756, 2021 WL 4481094, at *4 (S.D.N.Y. Sept. 29, 2021). "But-for" causation means that absent the retaliatory motive, the adverse action would not have occurred. *Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir. 2018). "A causal connection between the protected activity and the adverse action may be demonstrated by showing: (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *Dudley v. N.Y. City Hous. Auth.*, No. 12 Civ. 2771, 2014 WL 5003799, at *26 (S.D.N.Y. Sept. 30, 2014) (citation modified).

While the requisite *prima facie* case is similar, retaliation claims under the NYCHRL are subject to a lesser standard. To succeed on his NYCHRL claim, Plaintiff must show that the alleged

adverse employment action was motivated at least in part by an impermissible motive. *See Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013).

Here, Plaintiff's only identifiable instances of protected activity that he can point to are (i) a January 2022 complaint, purportedly about an alleged misogynistic comment that Madan made to Mickens on one occasion; and (ii) a July 2022 complaint to Jablonski and Powel about Madan excluding him from "critical communications, critical meetings associated with [his] responsibilities, . . . [and] withholding information," unrelated to any protected classification. Under either standard articulated above, Plaintiff's retaliation claim fails under Title VII, the ADEA, the NYSHRL, and the NYCHRL.

### A.      Plaintiff Did Not Engage In Protected Activity.

First, Plaintiff did not engage in protected activity. To constitute protected activity, Plaintiff must have taken some action "to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of N.Y.*, 921 F.3d 337, 354 (2d Cir. 2019) (citation modified). Additionally, Plaintiff's complaint must constitute a "good faith, reasonable belief that the underlying challenged actions" violated the law. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (citation omitted); *see Polite v. VIP Comm. Servs.*, 20 Civ. 7631, 2022 WL 9847075, at \*2 (S.D.N.Y. Oct. 17, 2022) ("It follows, then, that a complaint made in bad faith is not protected activity.").

Here, Plaintiff did not "protest or oppose statutorily prohibited discrimination" in either complaint. First, with respect to the July 2022 complaint to Jablonski and Powel regarding Madan's general workplace behavior towards him, there was no complaint or protest that Madan was violating the law; Plaintiff's complaint focused solely on normal workplace interactions, not any protected classification nor any allegation that the conduct was retaliatory. (SOF ¶¶ 105-110). Thus, this complaint was not protected activity. *See Canady v. Union 1199*, 253 F. Supp. 3d 547,

18

558 (W.D.N.Y. 2017) (interpersonal conflicts with staff members do not comprise "'protected activity for purposes of establishing a retaliation claim.'"); *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406–07 (S.D.N.Y. 2010) (plaintiff did not engage in protected activity when his complaints made no mention of discrimination); *Bain v. Wal–Mart Stores, Inc.*, 585 F. Supp. 2d 449, 453–54 (W.D.N.Y. 2008) (complaint about a manager's "tone" and turning "red in the face" while he "puffed up his chest" and told plaintiff to "shut up and count your till" was not a protected activity).

While Plaintiff alleges that he complained that Madan's communication toward Mickens in January 2022 was "misogynistic," he cannot recall what was said and not a single witness or document corroborates this self-serving testimony that the comment was gender-related. (SOF ¶ 94). Indeed, Mickens herself testified that Madan's concerns were work-related concerning the reassignment of an analyst to her department, and not gender-based. (SOF ¶ 95). Plaintiff's contemporaneous text to Mickens does not reflect a concern that Madan behaved misogynistically. (SOF ¶ 96). Thus, nothing other than Plaintiff's self-serving testimony (which is not enough) even *suggests* he opposed discrimination. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (self-serving testimony not enough to defeat summary judgment); *see Powell-Belnavis v. Guzman*, 23-cv-7344, 2025 WL 929639, at *4 (E.D.N.Y. Mar. 27, 2025) (granting summary judgment where plaintiff's "alleged protests do not even mention a protected characteristic or protected activity because of which plaintiff was experiencing discrimination[]"); *see Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (requiring of protected activity that employer "understood, or could reasonably have understood, that plaintiff's opposition was directed at conduct prohibited by" anti-discrimination laws); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 102-108 (2d Cir. 2011) (generalized comments such as that

19

defendant made her life miserable and that action needed to be taken was not enough to put the defendant on notice that it could have reasonably understood that plaintiff was complaining of prohibited conduct).

### B.    There is No Causal Connection.

Even if Plaintiff overcomes the hurdle of establishing his concerns were protected, which he cannot, there is no causal connection between either of Plaintiff's alleged complaints and the adverse action of (i) removing him as COO and Head of Hanover (which occurred *before*) and (ii) the termination of his employment nearly two years later.

As set forth by record evidence, Plaintiff was removed as COO and Head of Hanover in late-September / early October 2021 *before* any of the alleged protected activity defeating any causal connection. (SOF ¶ 63). *See Petyan v. N.Y.C. Law Dep't*, No. 14-CV-143, 2015 WL 1855961, at *13 (S.D.N.Y. Apr. 23, 2015) ("To constitute retaliation, the alleged protected activity must predate evidence of the alleged retaliatory animus."), *report and recommendation adopted by* 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (citation modified); *Cayemittes v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory."), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (summary order).

Additionally, there is no causal connection between either one of these complaints and the termination of Plaintiff's employment nearly two years later on November 6, 2023. District courts "in this Circuit have consistently held that a passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Percy v. Loc. 412 of CSEA, Inc., Loc. 1000*, 16-cv-5304, 2022 WL 704904, at *9 (S.D.N.Y. Mar. 9, 2022) (citation modified).  The large gap in temporal proximity between the alleged protected activity and the adverse action is fatal to his claims.  *See Thurmond v. Thomas-Walsh*, 18-cv-00409, 2022

WL 18027617, at *6 (S.D.N.Y. Dec. 30, 2022) ("There is no explanation here why [the defendant] would wait nearly three months to retaliate . . . the lack of temporal proximity is fatal to the causal connection element of Plaintiff's claim.").

Further defeating the causal connection is the fact that the individuals who played in a role in the decision to terminate Plaintiff's employment—Franco and Jablonski—were unaware of Plaintiff engaging in protected activity[1]. *See Murray v. Visiting Nurse Svcs. of N.Y.*, 528 F. Supp. 2d 257, 271-72 (S.D.N.Y. 2007) (claim dismissed because decision-makers were unaware of plaintiff's complaints); *Sareen v. The Port Authority of N.Y. & N.J.*, 592 F. App'x. 34, 34-35 (2d Cir. 2015) (summary order) (affirming summary judgment where plaintiff failed to show that decisionmakers were aware of and acted in retaliation for past complaint).

Plaintiff's retaliation claim also fails because he has presented no concrete direct or indirect evidence of retaliatory animus. Plaintiff has not identified any derogatory comments regarding either one of his complaints (as discussed above), nor has he alleged that any of Defendant's employees expressed even the slightest annoyance at him raising any concerns about Madan. *See Brown v. UPS United Parcel Serv. Incorp.*, 5:22-cv-762, 2022 WL 16734876, at *2 (N.D.N.Y. Nov. 7, 2022) (dismissing retaliation claim because plaintiff presented "no allegations of retaliatory animus").

**C.    Plaintiff Cannot Overcome Defendant's Legitimate, Non-Retaliatory Reason and Establish Retaliatory Pretext.**

As discussed above (*see supra* I(C)), Defendant had a legitimate, non-retaliatory reason for its actions toward Plaintiff. "[E]ven under the NYCHRL's broader framework," the burden

---

[1] Plaintiff is likely to allege that Madan learned of his complaint about Mickens and then began treating him poorly as retaliation which led to his termination. This is not supported by any record evidence. In fact, Mickens testified she did not tell Madan about Plaintiff's concerns and Madan did not mention Plaintiff when they discussed their workplace disagreement. (SOF ¶ 104). Moreover, the record is clear that Madan treated all employees harshly, regardless of protected characteristics, which undermines such theory. (SOF ¶¶ 102, 111).

therefore shifts to plaintiff to prove "a causal element between the protected activity and the alleged retaliatory conduct." *Wilkerson v. Metro. Transp. Auth.*, 19-cv-9340, 2021 WL 5761649, at *12 (S.D.N.Y. Dec. 3, 2021). This he cannot do.

Plaintiff cannot establish that the adverse actions taken against him were motivated by retaliatory motives (in connection with alleged complaints that he claims to have made concerning Madan). Plaintiff relies exclusively on conclusory, self-serving testimony about his own perceptions and beliefs. For example, Plaintiff testified, "I have no idea why he didn't want me in those meetings. I believe it was discriminatory, I believe it was retaliatory . . ." but cannot offer any actual evidence. (SOF ¶ 108).

Put simply, Plaintiff has no evidence to tie his alleged protected activity to either adverse action—one which occurred *before* any protected activity making connection impossible, and one occurring nearly two years later. *See Gioia v. Forbes Media LLC*, 501 F. App'x 52, 56 (2d Cir. 2012) (summary order) (granting summary judgment on NYCHRL retaliation claim where "[s]hort of speculation, there is no evidence that" retaliation "played even a partial motivating role in the decision to terminate" plaintiff). Accordingly, Plaintiff's retaliation claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety with prejudice.

Dated: June 16, 2026
      New York, New York

Respectfully submitted,

**SEYFARTH SHAW LLP**

*/s/ Courtney S. Stieber*

Courtney S. Stieber, Esq.
David S. Ostern, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, New York  10018
Telephone: (212) 218-5500
Email: cstieber@seyfarth.com
Email: dostern@seyfarth.com

23

## **LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing Memorandum of Law complies with word-count limitations. The foregoing Memorandum of Law contains 6,973 words, not including the caption, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: June 16, 2026                        */s/ Courtney S. Stieber*
                                             Courtney S. Stieber, Esq.

24